1

2                    UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7    ANTHONY PEREZ,

8                 Petitioner,                    No. C 04-2155 PJH (PR)

9         v.                                     **ORDER DENYING PETITION
                                                 FOR WRIT OF HABEAS**
10   J. HAMLETT, Warden,                         **CORPUS**

11                 Respondent.
                                          /
12

13        This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. §

14   2254.  The court ordered respondent to show cause why the writ should not be granted.

15   Respondent has filed an answer, along with a memorandum of points and authorities in

16   support of it, and has lodged exhibits with the court.  Petitioner filed a traverse and

17   respondent filed a supplemental answer.  The matter is submitted.

18                              **BACKGROUND**

19        Petitioner was convicted of second degree murder and is serving a term of fifteen

20   years to life in state prison.  Petitioner's habeas petition challenges the Board of Prison

21   Terms' ("Board") denial of his application for parole following a parole consideration hearing

22   on November 6, 2002.

23        Petitioner filed a petition for a writ of habeas corpus in the Orange County Superior

24   Court, which was denied in a written opinion on August 20, 2003.  The California Court of

25   Appeal denied his subsequent habeas petition and the California Supreme Court summarily

26   denied his petition for review.

27        Petitioner challenges his fifth denial of parole after serving seventeen years in prison

28   for second degree murder.  As grounds for habeas relief, petitioner asserts that: (1) His due

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

process rights were violated because the Board denied petitioner parole based on the unchanging circumstances of the offense and petitioner's prior history; (2) the Board and District Attorney violated his plea agreement by treating his crime as if it were first degree murder; and (3) his due process rights were violated because the Board is systematically biased.

Petitioner does not dispute the following facts, which are taken from his Probation Report.

On July 27, 1985 an illegal alien who was walking down the street in the Delhi barrio approached the defendant and some others, all of whom claim Delhi Street Gang membership, and asked for a cigarette. The defendant and others inquired about what gang the victim "claimed" and he denied any gang affiliation but admitted that he had a cousin who was a "Loper", a rival gang. The defendant and three of the other subjects then beat and kicked the victim but no weapons were used. The defendant and others then dragged the victim to another location on the street and left him unconscious on the sidewalk. The defendant and his girlfriend then entered a house. While the girlfriend showered, the defendant went outside to see if the police had come. He saw the victim walking slowly down the street and followed him. The defendant picked up a two-by-four board and hit the victim with it. The victim fell unconscious and died of blunt force trauma to the head.

Upon arrest, the defendant lied to the police regarding who his accomplices were but admitted kicking and hitting the victim. He denied following the victim or using the board but admitted those facts to his girlfriend.

Ex. D at 2.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-409 (2000), while the second prong applies to decisions based on factual determinations. *Miller-El v.*

United States District Court

For the Northern District of California

1   *Cockrell*, 537 U.S. 322, 340 (2003).  Section 2254(d) applies to a state prisoner's habeas

2   petition challenging the denial of parole.  *See Sass v. California Bd. of Prison Terms*, 461

3   F.3d 1123, 1126-1127 (9th Cir. 2006).

4          A state court decision is "contrary to" Supreme Court authority, that is, falls under

5   the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

6   that reached by [the Supreme] Court on a question of law or if the state court decides a

7   case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

8   *Williams (Terry)*, 529 U.S. at 412-413.  A state court decision is an "unreasonable"

9   application of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it

10  correctly identifies the governing legal principle from the Supreme Court's decisions but

11  "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The

12  federal court on habeas review may not issue the writ "simply because that court concludes

13  in its independent judgment that the relevant state-court decision applied clearly

14  established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must

15  be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

16         Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

17  determination will not be overturned on factual grounds unless objectively unreasonable in

18  light of the evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340;

19  *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

20         When there is no reasoned opinion from the highest state court to consider the

21  petitioner's claims, the court looks to the last reasoned opinion, in this case the superior

22  court's denial of petitioner's state habeas petition.  *See Ylst v. Nunnemaker*, 501 U.S. 797,

23  801-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

24                                   **DISCUSSION**

25  **I.     The Case is Not Moot**

26         Respondent contends that this petition was mooted when parole was again denied a

27  year later.   Article III, § 2, of the Constitution requires the existence of a case or

28  controversy through all stages of federal judicial proceedings.  This means that, throughout

United States District Court

For the Northern District of California

1 | the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury

2 | traceable to the defendant and likely to be redressed by a favorable judicial decision."

3 | *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).  An exception to the mootness

4 | doctrine exists, however, where a claim is "capable of repetition yet evading review."

5 | *Hubbart v. Knapp*, 379 F.3d 773, 777 (9th Cir. 2004), *cert. denied*, 543 U.S. 1071 (2005)

6 | (habeas petition challenging a civil commitment under California's Sexually Violent

7 | Predators Act was found to "evade review" because its duration was too short to be fully

8 | litigated prior to its expiration).  This exception to the mootness doctrine applies when "'(1)

9 | the challenged action [is] in its duration too short to be fully litigated prior to cessation or

10 | expiration, and (2) there [is] a reasonable expectation that the same complaining party [will]

11 | be subject to the same action again.'"  *Ibid.* (quoting *Spencer v. Kenna*, 523 U.S. 1, 17

12 | (1998)).  When parole hearings are conducted at roughly yearly intervals, as here, any

13 | decision resulting from such a hearing comes within the exception.  The case is not moot.

14 | **II.    Merits**

15 |      Petitioner challenges the Board's decision finding him unsuitable for parole.  While

16 | there is "no constitutional or inherent right of a convicted person to be conditionally

17 | released before the expiration of a valid sentence", a state's statutory parole scheme, if it

18 | uses mandatory language, may create a presumption that parole release will be granted

19 | when or unless certain designated findings are made, and thereby give rise to a

20 | constitutionally protected liberty interest.  *Greenholtz v. Inmates of Nebraska Penal & Corr.*

21 | *Complex*, 442 U.S. 1, 7 (1979); *see Board of Pardons v. Allen*, 482 U.S. 369, 376-378

22 | (1987).  In such a case, a prisoner gains a legitimate expectation in parole that cannot be

23 | denied without adequate procedural due process protections.  *See Allen*, 482 U.S. at 373-

24 | 381; *Greenholtz*, 442 U.S. at 11-16.

25 |      California's parole scheme uses mandatory language and is largely parallel to the

26 | schemes found in *Allen* and *Greenholtz*, giving rise to a protected liberty interest in release

27 | on parole.  *See* Cal. Penal Code § 3041(b).  In California, the parole board is allowed to

28 | consider the gravity of the commitment offense in assessing a prisoner's suitability for

United States District Court

For the Northern District of California

1    parole.  *Id.*  However, if the parole board "determines that the gravity of the current

2    convicted offense or offenses, or the timing and gravity of current or past convicted offense

3    or offenses, is such that consideration of the public safety requires a more lengthy period of

4    incarceration for this individual" then a parole date cannot be set at that hearing.  *Id.*  The

5    Ninth Circuit has held explicitly that "California's parole scheme gives rise to a cognizable

6    liberty interest in release on parole."  *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir.

7    2002); *see also In re Rosenkrantz*, 29 Cal. 4th. 616, 655-658 (2002) (holding that prisoners

8    have a protected liberty interest in parole under the due process protections of the

9    California Constitution).  The scheme creates a presumption that parole release will be

10   granted unless the statutorily defined determinations are made.  *McQuillion*, 306 F.3d at

11   902.  This is true regardless of whether a parole release date has ever been set for the

12   inmate, because "[t]he liberty interest is created, not upon the grant of a parole date, but

13   upon the incarceration of the inmate."  *Biggs v. Terhune*, 334 F.3d 910, 915-916 (9th Cir.

14   2003) (finding that initial refusal to set parole date for prisoner with fifteen years-to-life

15   sentence implicated prisoner's liberty interest).

16       The Supreme Court has clearly established that a parole board's decision deprives a

17   prisoner of due process if the board's decision is not supported by "some evidence in the

18   record", or is "otherwise arbitrary."  *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007)

19   (applying "some evidence" standard used for disciplinary hearings as outlined in

20   *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same).  The

21   evidence underlying the Board's decision must also have "some indicia of reliability."

22   *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915.  The some evidence standard

23   identified in *Hill* is clearly established federal law in the parole context for purposes of     §

24   2254(d).  *See Sass*, 461 F.3d at 1128-1129.

25       Ascertaining whether the some evidence standard is met "does not require

26   examination of the entire record, independent assessment of the credibility of witnesses, or

27   weighing of the evidence.  Instead, the relevant question is whether there is any evidence

28   in the record that could support the conclusion reached by the disciplinary board."  *Hill*, 472

United States District Court

For the Northern District of California

U.S. at 455; *Sass*, 461 F.3d at 1128.  The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the Board's use of evidence from the commitment offense and prior offenses.  In *Biggs*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time.  *Biggs*, 334 F.3d at 916-917.  The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  *Id.*  Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest."  *Id.* at 916.

The *Sass* court, however, criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed."  *Sass*, 461 F.3d at 1129.  *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses.  *See id.* (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole).  However, *Sass* does not dispute the argument in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

Moreover, in the recent *Irons* decision, the Ninth Circuit emphasized the continuing vitality of *Biggs*.  *See Irons*, 470 F.3d at 664.  However, the court found that relief for Irons

United States District Court

For the Northern District of California

1    was precluded by *Sass*. *Id.*  The Ninth Circuit explained that all of the cases in which it

2    previously held that denying parole based solely on the commitment offense comported

3    with due process were ones in which the prisoner had not yet served the minimum years

4    required by the sentence.  *Id.* at 665.  Also, noting that the parole board in *Sass* and *Irons*

5    appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth

6    Circuit stressed its hope that "the Board will come to recognize that in some cases,

7    indefinite detention based solely on an inmate's commitment offense, regardless of the

8    extent of his rehabilitation, will at some point violate due process, given the liberty interest

9    in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917).

10   Even so, the Ninth Circuit has not set a standard as to when a complete reliance on

11   unchanging circumstances would amount to a due process violation.

12        *1.    Parole Based on Commitment Offense and Prior Conduct*

13        Petitioner contends that his right to due process was violated because he was

14   denied parole based on the unchanging circumstances of the crime and his prior criminal

15   conduct.  However, the Board identified several factors in support of its determination that

16   petitioner was unsuitable for parole and would pose an unreasonable risk of danger to

17   society or a threat to public safety if he was released.  These are discussed below.

18        *a.    Commitment Offense*

19        The Board determined that petitioner's crime was carried out in an especially cruel

20   and callous manner.  The Board may consider the gravity of the commitment offense in

21   assessing an inmate's suitability for parole.  Cal. Penal Code § 3041(b).  The commitment

22   offense may be a circumstance indicating unsuitability for parole if the "prisoner committed

23   the offense in an especially heinous, atrocious, or cruel manner."  15 Cal. Code Regs. §

24   2402(c)(1).  In determining this, the Board may consider whether "the offense was carried

25   out in a manner which demonstrates an exceptionally callous disregard for human

26   suffering", and "[t]he motive for the crime is inexplicable or very trivial in relation to the

27   offense." *Id.*

28   ///

1   Here, the Board considered the circumstances of the murder as a factor indicating

2   unsuitability for parole.  Considering that the victim was walking down the street and asked

3   petitioner for a cigarette and was then beaten and kicked by petitioner and his three friends,

4   the Board reasoned that the motive for the crime was inexplicable or very trivial in

5   relationship to the offense.  Ex. F at 40.  The Board also said that the offense demonstrated

6   "an exceptional disregard for human suffering."  *Id.*  There was no evidence that the victim

7   offered any resistance or provoked petitioner in any way.  After beating the victim, petitioner

8   and his friends dragged the victim to another location and left him unconscious on the

9   sidewalk.  Ex. D at 2.  Later, petitioner came outside and saw the victim walking slowly

10  down the street.  *Id.*  Petitioner then picked up a two by four and hit the victim in the head.

11  The victim fell unconscious and died of blunt force trauma to the head.  *Id.*  Given this, it

12  was clearly correct for the Board to find that the crime was carried out in a manner which

13  demonstrates an exceptional disregard for human suffering.  Ex. F at 40.

14              *b.    Unstable Social History*

15  The Board also relied on petitioner's unstable social history as a factor for

16  unsuitability.  Petitioner's unstable social factors include: prior gang involvement and

17  criminal conduct, smoking marijuana and drinking alcohol at a young age, and petitioner's

18  father leaving the home when he was ten years old.  Ex. F at 41-42.  An unstable social

19  history is listed as a circumstance tending to indicate unsuitability.  15 Cal. Code Regs. §

20  2402(c)(3).  In addition, circumstances which taken alone that do not clearly establish

21  unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

22  15 Cal. Code Regs. § 2402(b).

23  In denying parole, the Board explained that petitioner had "an escalating pattern of

24  criminal conduct and violence" and "failed to profit from society's previous attempts to

25  correct his criminality."  Ex. F at 41.  Although petitioner denies current involvement in a

26  gang, he admitted that he became involved with the Dehli gang when he was thirteen years

27  old.  Ex. E at 11-12.  On March 23, 1982, when petitioner was fifteen years old, he was

28  arrested for robbery and spent ninety days at Los Pinos Forrestry Camp.  Ex. E at 8.  On

United States District Court

For the Northern District of California

1  September 8, 1982, petitioner was arrested for a minor in possession of alcohol and the

2  petition was sustained for possession of a deadly weapon in violation of parole.  *Id.*  When

3  petitioner was seventeen, he was arrested for attempted burglary.  Petitioner returned to

4  Los Pinos Forrestry Camp.  Two years later, petitioner killed the victim of the present case.

5  Ex. E at 8-9.  The Board considered these facts in support of its decision under § 2402(b),

6  which allows the Board to consider "any other information which bears on the prisoner's

7  suitability for release."  These events were fairly far in the past, and at some point they

8  would cease to be worth any weight, applying the *Biggs* approach; but at this point, they

9  are evidence supporting denial of parole.

10          *c.     Commitment to Sobriety*

11          As another factor of unsuitability, the Board considered petitioner's commitment to

12  sobriety.  Petitioner stated that he began smoking marijuana at age twelve and started

13  drinking alcohol at fifteen.  *Id.* at 13.  He admitted that he had been drinking at the time of

14  the crime and that he "often becomes very violent when he drinks."  Ex. D at 3.  Petitioner

15  said that the day of the crime he "had been drinking heavily since early morning."  Ex. E at

16  21.  Thus, the Board had good reason to be concerned about petitioner's alcohol problem.

17  In prison, petitioner participated in a substance abuse treatment program and is currently

18  waiting to be enrolled in another program.  *Id.* at 19.  However, at his parole hearing he

19  could not identify any of the twelve steps for recovering alcoholics, *id.* at 19-20, which is a

20  matter for concern when his psychological evaluation assessed him as a relatively low risk

21  to the public only if he stayed away from alcohol, drugs, and others with a criminal history.

22  As a result, the Board recommended that petitioner participate in more self-help programs

23  relating to substance abuse.  Ex. F at 43.  Because of the importance of alcohol abuse in

24  petitioner's crime, the doubt cast on his sobriety by his lack of knowledge of the twelve

25  steps, and the importance of sobriety to the level of risk he poses to society, this evidence

26  was significant and clearly supports the denial of parole.

27  ///

28          *d.     Board Report and Psychiatric Report*

9

1    Additionally, the Board considered petitioner's psychiatric reports at the parole

2  hearing.  In assessing a prisoner's suitability for parole, the Board is allowed to look at

3  psychological factors.  15 Cal. Code Regs. § 2402(b).  A November 2002 Board report,

4  performed by correctional counselor M. Rubio, stated that petitioner "would probably pose a

5  low degree of threat to the public at this time if released from prison."  Ex. E at 20.  Dr. Cliff

6  Leonard completed petitioner's most recent psychiatric report.  In the June 2001 report, Dr.

7  Leonard indicated that petitioner's violence potential "is slightly greater than the average

8  non-offending citizen in the community."  *Id.* at 22.  The doctor noted that, if paroled,

9  petitioner's significant risk factors and precursors to violence would be likely to include:

10  "involvement with alcohol or controlled substances, involvement with others having a

11  criminal history or criminal involvement with periods in which he might feel that he had

12  nowhere to live and no available support."  *Id.* at 22-23.  In order to minimize the risk of

13  future criminal involvement, the doctor recommended frequent monitoring for any illegal

14  substance abuse, initial placement for at least several months in a halfway house program

15  probably focusing on alcohol dependence concerns, and have available significant

16  vocational and personal counseling resources.  *Id.* at 23.  Based on petitioner's violence

17  potential in the community, the Board requested that a new psychiatric report be completed

18  for petitioner's next parole hearing.  Ex. F at 42.  When considered with the evidence

19  casting doubt on petitioner's commitment to sobriety, this evidence supports denial of

20  parole.

21                    *f.    Conclusion*

22    In sum, the Board's denial of parole was supported by the evidence set out above,

23  including the nature of the commitment offense, petitioner's unstable social history, and

24  petitioner's need for additional self-help programs for his substance abuse.  This amounted

25  to "some evidence" in support of the result.  Thus, the Board did not violate petitioner's due

26  process rights when it found him unsuitable for parole.  Because there was no

27  constitutional violation, the state courts' rejection of petitioner's claim was not contrary to,

28  nor an unreasonable application of, clearly established United States Supreme Court

United States District Court

For the Northern District of California

1    authority.

2        *2.    Breach of Plea Agreement*

3        Petitioner contends that the Board violated his plea agreement when it did not set

4    his parole release date.  Petitioner claims that he accepted the plea agreement on the

5    basis that the District Attorney would represent his offense as a second degree murder.

6    He claims that the District Attorney rechacterized his crime as a first degree murder by

7    opposing parole after he served more than the uniform term for his crime.  Therefore,

8    petitioner alleges, he accepted and entered into the plea agreement under false promises.

9        A criminal defendant has a due process right to enforce the terms of a plea

10   agreement.  *Santobello v. New York*, 404 U.S. 257, 261-262 (1971).  Plea agreements are

11   contractual in nature and are subject to contract law standards of interpretation.  *In re Ellis*,

12   356 F.3d 1198, 1209 (9th Cir. 2004).  In determining whether a plea agreement is

13   breached, courts look to what the parties reasonably understood to be the terms of the

14   agreement.  *See Buckley v. Terhune*, 441 F.3d 688, 696-697 (9th Cir. 2006); *United States*

15   *v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979).

16       Here, petitioner stated that he pled guilty to a second degree murder and the

17   accompanying sentence of fifteen years to life.  Pet. at 5.  Petitioner does not point to any

18   language in the plea agreement showing the Board breached a particular term when it

19   denied him parole.  Petitioner's claim merely amounts to an attempt to enforce his

20   subjective expectation that he would be released at the earliest parole date.  He has failed

21   to show that the plea agreement included the terms he asks this court to enforce.

22       Petitioner alleges that he did not receive the reciprocal benefit of the plea

23   agreement.  Based on the plea agreement, petitioner received a fifteen year to life

24   sentence, and not a straight fifteen year sentence.  Petitioner's benefit of the plea

25   agreement was that he avoided a possible first degree murder conviction and it secured

26   him earlier consideration of his parole suitability.  The agreement gave petitioner the

27   opportunity for an earlier parole hearing, however it was not a guarantee that parole would

28   be granted.  Therefore, petitioner received the parole considerations to which he was

**United States District Court**

For the Northern District of California

1   entitled under the agreement.  For these reasons, the Board did not breach the terms of

2   petitioner's plea agreement and there was no constitutional violation.  Thus, the state

3   courts' rejection of petitioner's claim was not contrary to, nor an unreasonable application

4   of, clearly established United States Supreme Court authority.

5           *3.     Biased Board*

6           Petitioner contends that his due process rights were violated because the Board is

7   not an unbiased decision maker.  Petitioner alleges that his hearing reflects the Boards'

8   systematic bias against granting parole.  Petitioner argues that "approximately 97% of

9   inmates [are] routinely denied parole as being particularly egregious, i.e. heinous,

10  atrocious, or cruel, regardless of comparative offense gravity, crime circumstances, or

11  degree."  Pet. at 19.

12          The parole procedure must provide prisoners with sufficient safeguards.  *See*

13  *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).  A prisoner must be

14  afforded an opportunity to be heard before an unbiased decision-maker.  *See id.*  And in

15  the case of parole denial, a prisoner must be informed of the reasons underlying the

16  decision.  *See id.*  Even if there is some evidence to support a decision, if it is established

17  that a particular judgment was predetermined, then a prisoner's due process rights have

18  been violated.  *See Bakalis v. Golembeski*, 35 F.3d 318, 326 (7th Cir. 1994); *see also*, *In re*

19  *Rosenkrantz*, 29 Cal. 4th at 677 (a parole decision "must reflect an individualized

20  consideration of the specified criteria and cannot be arbitrary and capricious").  The Ninth

21  Circuit has held that a California prisoner is entitled to have his release date considered by

22  a parole board that is free from bias or prejudice.  *O'Bremski v. Maas*, 915 F.2d 418, 422

23  (9th Cir. 1990) (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Morrissey v.*

24  *Brewer*, 408 U.S. 471, 489 (1972); *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.

25  1981).

26          Petitioner provides no specific information showing that the Board that decided his

27  case was biased at his hearing.  He does not point to any evidence which demonstrates

28  that the Board's decision was predetermined.  Moreover, the record indicates that petitioner

**United States District Court**
For the Northern District of California

1   received an individualized hearing and consideration regarding his parole suitability.  The

2   Board specified the evidence it relied upon in denying parole.  First, the Board disapproved

3   petitioner's psychiatric report which stated that petitioner would pose a higher than average

4   danger to the public.  Ex. F at 42.  Second, the Board disapproved petitioner's commitment

5   to sobriety.  *Id.* at 43.  Finally, the Board pointed to petitioner's escalating pattern of criminal

6   conduct as a youth, and noted all of his prior offenses.  Ex. E at 8-9.  Based on these facts,

7   the Board came to the conclusion that petitioner was not yet suitable for parole and would

8   pose a threat to public safety if released from prison.  Ex. F at 40.  The court finds no merit

9   in petitioner's claim that his parole hearing reflects the Board's systematic bias against

10  granting parole.  Thus, there was no due process violation, and the state courts' decision

11  was not contrary to, nor an unreasonable application of, clearly established Supreme Court

12  authority.

13                                    **CONCLUSION**

14          For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The

15  clerk shall close the file.

16          **IT IS SO ORDERED.**

17  Dated:7/30/07                    _____

18                                    PHYLLIS J. HAMILTON
                                      United States District Judge

19

20

21

22

23

24

25

26

27  G:\PRO-SE\PJH\HC.04\PEREZ155.RUL.wpd

28